IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| SHELLI W. COLEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:13-CV-00418-NKL |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is Plaintiff Shelli Coleman's appeal of the Commissioner of Social Security's final decision denying her applications for Title II disability insurance benefits and Title XVI supplemental security income benefits. For the reasons set forth below, the Commissioner's decision is AFFIRMED.

**I.     Background**

Coleman was born in February 1965, has the equivalent of a high school education, and has prior work experience as an administrative clerk. Coleman alleges she became disabled on February 21, 2007, due to the combined effects of osteoarthritis of the hips, obesity, chronic migraines, congenital bilateral hearing loss, generalized anxiety disorder, major depressive disorder, hypertension, diabetes mellitus, obstructive sleep apnea, hypothyroidism, degenerative joint disease, polymyalgia, and polyarthralgia. [TR-427]; [Doc. 12, at p. 2].

The procedural history of this case is particularly important.  Following a hearing in November 2009, an ALJ issued a partially favorable decision and concluded Coleman was disabled beginning on June 10, 2009. [TR-13-23].  Coleman appealed the decision to this Court and then to the Eighth Circuit, where, at the request of the Commissioner, the Eighth Circuit remanded the case with instructions to reverse and remand to the Commissioner for further consideration.  *See generally Coleman v. Astrue*, No. 10-0617, 2011 WL 2416327 (W.D. Mo. 2011).  On remand in April 2012, the Appeals Council ordered the ALJ to give further consideration to all of Coleman's severe impairments, including her mental impairments, and to consider earlier evidence of Coleman's mental impairments including medical records and a letter from Coleman's pastor. [TR-527-31]. The ALJ issued a new, final hearing decision in January 2013, finding that Coleman was "disabled" according to the Social Security Act beginning October 16, 2008. [TR-424-34].  Coleman appeals the ALJ's finding that she was not disabled between February 21, 2007 and October 15, 2008.

In the ALJ's January 2013 decision, he found that for the period between her alleged onset date of February 21, 2007, and October 15, 2008, Coleman suffered from the following severe impairments: osteoarthritis of the hips, obesity, chronic migraines, and congenital bilateral hearing loss. [TR- 427].  After determining Coleman's residual functional capacity as it relates to those severe impairments, and after testimony from a vocational expert, the ALJ determined that Coleman's impairments did not preclude her from performing work that exists in significant numbers in the national economy. However, beginning October 16, 2008, the ALJ found that Coleman had additional

severe impairments – generalized anxiety disorder and major depressive disorder – which precluded her from completing a normal workweek. [TR-427].

Coleman's alleged points of error primarily relate to her mental impairments and so a discussion of the records relating to those impairments is necessary. In October 1986, Coleman was hospitalized for suicidal ideation. [TR-374]. In August 1988, Coleman was admitted to a psychiatric hospital after she complained of depression and suicidal thoughts. [TR-356]. Coleman was discharged approximately one month later. [TR-358]. She was diagnosed with recurrent major depression, borderline personality traits, and exogenous obesity. [TR-358]. Coleman was hospitalized in December 1989 for suicidal plans. [TR-374]. She was diagnosed with adjustment disorder with depressed mood, borderline personality disorder, and obesity. [TR-375].

Coleman worked several jobs beginning around 1992 up to her onset date. The record reflects Coleman experienced financial difficulties in 2007-2008 and had no medical insurance, which affected her ability to obtain all of her prescribed medications for her hip pain and other impairments. *See e.g.*, [TR-291]. Coleman presented to a medical clinic or hospital three times in 2007. She reported migraines or hip pain and reported chest pain at an emergency hospital visit. She also presented for the purpose of applying for disabled license plate tags and to request a reduction in her prescription medications because she could not afford them. [TR- 289, 291, 332, 336]. In October 2007, she underwent a consultative, physiatric examination for the purpose of a disability determination. [Doc. 294-98]. At that time, Coleman complained of migraines, aching pain in her back, severe pain in her hips, numbness, tingling, and hearing loss. [TR-296].

3

In November 2007, a non-examining psychologist reviewed Coleman's records for the purpose of completing a Psychiatric Review Technique. The psychologist opined Coleman had at most, mild mental limitations, and did not have a mental disability. [TR-307].

In June 2008, Coleman complained to her primary care physician that she was experiencing "increased" anxiety and depression. [TR-325]. She was referred to a mental health clinic, but her doctor made no assessment regarding her mental health at that time. Coleman's first appointment at the mental health clinic was October 16, 2008, the same day the ALJ found Coleman's mental impairments to be severe. The licensed psychologist observed that Coleman was experiencing severe depression and anxiety and assessed a GAF score of 37. [TR-1175-76]. The psychologist's record states that Coleman has a history of depression dating back to early childhood and her current symptoms had persisted for two to three years. [TR-1176]. She began regular mental health treatment in May 2009 after qualifying for Medicaid. [TR-1156].

Coleman's mother testified that Coleman suffered from depression during the period of 2007 to 2009, did not have medical insurance, would often cancel appointments they had, and would sometimes refuse to let her in the house. [TR-476-79]. Coleman's pastor also submitted a letter documenting Coleman's mental impairments. The letter, dated November 4, 2008, states that Coleman attended counseling sessions with her pastor every other week for a period of eight or nine months. [TR-276]. The letter states Coleman's "major difficulty was in the area of depression, fears, and worry regarding her self esteem." [TR-276]. The letter also states that, "[f]or a period of time, after our time

of counseling, [Coleman] began to improve and experienced better quality of life." [TR-276]. The letter does not indicate the period during which the counseling occurred.

## II. Discussion

Coleman argues the ALJ erred by failing to contact her pastor to determine the nature and timing of their counseling sessions, failed to consider whether her lack of mental health treatment was due to her inability to afford it, and failed to consider how her obesity affected her mental functioning. Each of these points of error is unpersuasive and unsupported by the record.

### A. Failure to Contact Coleman's Pastor

Coleman argues the ALJ improperly concluded under Step 2 that her mental impairments were not severe prior to October 16, 2008, because the ALJ failed to comply with the Appeals Council's order requiring him to "evaluate the letter from the claimant's pastor . . . in accordance with 20 C.F.R. § 404.1513(d) and Social Security Ruling 06-03p." [TR-530]. In particular, Coleman argues the ALJ was required to contact her pastor to determine the timing and nature of their counseling relationship.

When determining whether a claimant is disabled, the ALJ must employ a five step process. *Hepp v. Astrue*, 511 F.3d 798, 803 n.4 (8th Cir. 2008); 20 C.F.R. § 416.920. Step two of the evaluation states that a claimant is not disabled if her impairments are not "severe." 20 C.F.R. § 416.920(a)(4)(ii). It is the claimant's burden to establish that her impairment or combination of impairments is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Though not a toothless standard, the claimant needs to show only a minimal work-related effect. *See Nguten v. Chater*, 75 F.3d 429, 431 (8th

5

Cir. 1996). In determining whether an impairment is severe, 20 C.F.R. § 404.1513(d) states that the Social Security Administration may consider evidence from non-medical sources such as clergy in determining the severity of an impairment and how it affects a claimant's ability to work. Social Security Ruling 06-03p clarifies how opinions from sources who are not "acceptable medical sources" are considered. Opinions from "non-medical sources" should be evaluated by using certain factors such as the nature and extent of the relationship, the source's qualifications, the source's area of specialty, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion." SSR 06-03p, *available at* 2006 WL 2329939 at *6 (S.S.A. Aug. 9, 2006).

The ALJ mentioned the pastor's letter, but remarked that the letter did not specify the period of counseling. [TR-429]. Coleman argues the ALJ had a duty under 20 C.F.R. § 404.1513 and SSR 06-03p to contact the pastor and follow up about the specifics of their relationship. However, § 404.1513(e) states that "information *you* give us about your medical condition(s) and how it affects you, and other evidence from other sources, must be *complete* and *detailed* enough to allow us to make a determination or decision . . . ." (emphasis added). The burden of providing complete information from her pastor was on Coleman, not the ALJ or the Commissioner. Citing 20 C.F.R. § 404.1512(e), Coleman argues that the ALJ had a duty to contact the pastor because the ALJ has a duty to contact a treating source for clarification of his opinions. However, § 404.1512(e) states that the Commission will make "every reasonable effort to obtain evidence from

your own medical sources." Coleman's pastor is not a medical source and so § 404.1512(e) is inapposite. Social Security Ruling 06-03p and 20 C.F.R. § 404.1513 did not require further action by the ALJ beyond his consideration of the letter.

Similarly, SSR 83-20 does not apply to the pastor's letter. Social Security Ruling 83-20 requires an ALJ to call on the services of a medical advisor and to consider information from lay sources like family and friends when the onset of an impairment must be inferred. However, SSR 83-20 only requires the services of a medical advisor or lay witness testimony when reasonable inferences about the progression of an impairment cannot be made on the basis of the evidence on file and when additional relevant medical evidence is not available.

There was sufficient evidence for the ALJ to make his determination that Coleman's mental impairments were not severe prior to October 16, 2008, and so the additional considerations in SSR 83-20 were not required. In a Disability Report-Appeal, dated November 4, 2008, Coleman stated that she experienced increased depression and anxiety beginning in November 2007. [TR-268]. Prior to that time, however, Coleman rarely self-reported depression and anxiety as reasons for why she is disabled. While in September 2007 Coleman listed "depression" as an illness that limited her ability to work in a Disability Report, she did not explain in the subsequent question of that report how depression limited her ability to work despite doing so for her other impairments. [TR-227]. In October 2007, Coleman stated in a Function Report that she lost her job in February 2007 after missing more than 75 days of work due to migraines, tremors, and pain in her hands, arms, hips, back, legs, head, and feet. [TR-249].

7

Depression and anxiety are missing from this list. The October 2007 Function Report filled out by Coleman also does not list depression or anxiety as a cause for the challenges she lists in the report, which are overwhelmingly attributed to migraines and pain in her hips. [TR-250-57]. A consultative psychiatric examination in October 2007 also contains no indication of mental impairments, either complained of or assessed. [TR 294-98]. Coleman testified at her hearing in front of the ALJ that she applied for a job over the Internet in March 2007 and received unemployment insurance intermittently until February 2008, which suggests that she believed she could work and actively sought to do so. [TR-461-62]. *See Paschal v. Astrue*, 2010 WL 1629091, at \*1 (8th Cir. 2010).

The ALJ also concluded that the record contains no objective medical evidence to support her claim that she suffered disabling mental impairments prior to October 2008. Prior to the records in October 2008, the earliest records suggesting substantial mental health treatment were from 1988-89, nearly twenty years earlier. The ALJ also relied on the opinion of a non-examining psychologist. [TR-299-309]. The consultant opined in November 2007 that based on her medical records, Coleman had no more than mild restrictions in mental functioning.

This case is also distinguishable from *Basinger v. Heckler*, 725 F.2d 1166 (8th Cir. 1984). In *Basinger*, the claimant was diagnosed with diabetes in 1968 and worked until 1973, when he quit because of poor health. He had not visited a doctor from 1973-1980. In 1980, he was hospitalized for diabetes complications, but he last met his insured status in 1978 and thus had to prove he was disabled beginning in 1978. The claimant submitted testimony from his wife and friends indicating that he was disabled in 1978

and evidence from his current doctors opining that his current level of symptoms indicated an onset of at least five years earlier. However, rather than providing a credibility assessment to this testimony, the ALJ denied disability benefits based on the lack of objective medical evidence. *Id.* at 1170. After the district court affirmed due to a lack of objective medical evidence, the Eighth Circuit reversed and remanded the case, finding that the ALJ erred by failing to give adequate consideration to subjective testimony from the claimant, his wife, and others, especially in light of the scant medical evidence. *Id.* at 1170.

Unlike in *Basinger*, the ALJ acknowledged the testimony of both Coleman's mother and pastor and based his conclusions on more than just a lack of objective medical evidence. Rather than rejecting Coleman's claims outright, the ALJ considered the available, non-medical evidence and cited to Coleman's activities of daily living which he found to be inconsistent with disabling anxiety and depression. Further, there was no indication in *Basinger* that the claimant's subjective evidence was incomplete or insufficient to help the ALJ reach a conclusion. The ALJ pointed out that the letter from Coleman's pastor did not contain treatment dates – which, as discussed above – was her burden.

In light of the evidence before the ALJ, he could reasonably infer that Coleman's mental impairments were not severe prior to October 16, 2008. He was therefore, not required to conduct an additional investigation into the counseling relationship between Coleman and her pastor. It was Coleman's responsibility under Step 2– not the ALJ's – to provide evidence that was complete and detailed, and since her pastor is not a medical

9

source, the ALJ had no duty to investigate further where sufficient evidence supported his findings. By considering the pastor's letter and referencing it in his opinion, the ALJ complied with the Appeals Council's directive.

### B. Failure to Consider Financial Inability to Obtain Treatment

Coleman next argues that before using her limited medical treatment as a factor in finding that her mental impairments were not severe prior to October 16, 2008, the ALJ was required to consider Coleman's allegation that she did not seek treatment because she could not afford it. [Doc. 12, at p. 28]. However, the ALJ's opinion contains at least three acknowledgments that Coleman was unable to afford medication and did not have insurance. [TR-428, 430]. The record also shows that despite her financial difficulties, Coleman presented to a medical clinic or hospital three times in 2007 and never reported issues with depression or anxiety. [TR- 289, 291, 296, 332, 336]. While it may be true that Coleman did not have the financial ability to afford regular mental health treatment, she never complained of her mental health at the appointments she was able to afford.

Citing 20 C.F.R. § 404.1530(a), Coleman also argues that the ALJ cannot cite her lack of treatment unless he could show the treatment would restore her ability to work. However, § 404.1530 addresses a failure to follow a prescribed treatment, not the failure to seek treatment altogether, and is therefore inapposite.

The ALJ's acknowledgment of Coleman's financial difficulties and evidence in the record suggesting she did not complain of mental impairments when she could afford treatment support his finding that Coleman's mental impairments were not disabling prior to October 16, 2008.

### C. Failure to Consider Obesity as a Factor in Mental Health Functioning

Coleman also argues the ALJ failed to consider her obesity as a factor in her mental functioning. There is no objective or subjective evidence suggesting her mental functioning is affected by her obesity, and Coleman has not cited or complained of any obesity-related symptoms that would limit her mental functioning. The ALJ's determination that her obesity was a severe impairment is sufficient.

### III. Conclusion

The ALJ's decision is supported by substantial evidence in the record and to the extent it is argued, the decision complies with the order from the Appeals Council. Accordingly, for the reasons set forth above, the ALJ's decision is AFFIRMED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: August 4, 2014
Jefferson City, Missouri